**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| GARY HARVEY, LEIGH HARVEY, and<br>MJ&H FABRICATION LLC,<br><br>     Plaintiffs,<br><br>v.<br><br>COBALT LA MARQUE LLC,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)     **Case No. CIV-26-1339-R**<br>)<br>)<br>)<br>)<br>) |

## ORDER

Before the Court is Plaintiffs' Motion to Remand [Doc. No. 2]. Defendant responded [Doc. No. 9] and Plaintiffs replied [Doc. No. 10]. Also before the Court is Defendant's Motion for Order Declaring Expiration of State Court Temporary Restraining Order [Doc. No. 3], to which Plaintiffs responded [Doc. No. 8]. Defendant replied [Doc. No. 11]. The matters are now at issue.

## BACKGROUND

Plaintiffs initiated this lawsuit seeking a determination of the validity, interpretation, and enforceability of several contracts between themselves and Defendant Cobalt La Marque, LLC [Compl., Doc. No. 1-1, at p. 1].[1]  The contracts at issue purport to transfer or encumber business assets, stock, receivables, equipment, and real property. *Id.* Plaintiffs Gary and Leigh Harvey seemingly operate Plaintiff MJ&H Fabrication. *See generally id.* In February of 2025, Mr. Harvey and MJ&H entered into Agreement One with Defendant.

---

[1] Consistent with this Court's nomenclature, the Court will refer to the operative pleading document as the "Complaint" rather than the "Petition."

*Id.* ¶ 16. Agreement One stated that Cobalt would provide a $400,000 line of credit to Mr. Harvey and MJ&H in exchange for the assignation of stock and assets. *Id.* ¶ 17. Those assets included 100% of Mr. Harvey's and MJ&H's stock, a purchase order from Nortek Industries valued at over $2 million, receivables from Nortek worth around $75,000, commercial equipment estimated to be worth over $1 million, six acres of real property with a workshop valued at $400,000, and 340 acres of real property with home, barn, and a lake valued at over $2.4 million. *Id.* ¶ 18.

In June of 2025, the Harveys and MJ&H executed an Amendment with Cobalt, "'restat[ing] and further assign[ing]' interests 'as collateral'" to Cobalt. *Id.* ¶¶ 19-21. Those interests included 100% of MJ&H's common stock, all rights to invoice receivables from customer purchase orders (with a requirement that customers pay Cobalt directly), commercial equipment and fixtures, and real property and real estate. *Id.* ¶ 21.

Plaintiffs assert the contracts use inconsistent and unclear terminology, making it unclear whether the transaction between themselves and Defendant is an outright conveyance of title, a pledge/security interest governed by UCC Article 9, a deed of trust/mortgage against real property, or a conditional transfer involving a defeasance condition. *Id.* ¶ 30. Plaintiffs filed this declaratory judgment action in state court, seeking (1) a declaration that any purported lien, security interest, assignment, or encumbrance created as to homestead property is void and of no effect, (2) a declaration that any conditional sale or defeasance-based transfer of homestead is void, and (3) a declaration construing Agreement One and the Amendment, including that any assignment of stock is at most a pledge/security interest subject to governing law clarity. *Id.* ¶¶ 38-53.

On the same day Plaintiffs initiated this suit, the state court entered an ex parte Order Granting Temporary Emergency Injunctive Relief [Doc. No. 1-3] restraining Cobalt from collecting certain receivables from Nortek Industries.  A week later, Defendant removed this case to federal court on the basis of diversity jurisdiction [Doc. No. 1]. Plaintiffs ask this Court to remand the case back to state court, claiming Defendant has not met its burden of establishing the amount-in-controversy requirement for diversity jurisdiction. Defendant disagrees and has also moved for this Court to declare the TRO has expired.

## I.    The Motion to Remand

Diversity jurisdiction under 28 U.S.C. § 1332(a) requires complete diversity between plaintiffs and defendants and that the amount in controversy exceeds $75,000, exclusive of interest and costs. The amount in controversy is simply "an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). And, "as specified in [28 U.S.C.] § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*

On a motion to remand, the removing party has the burden of proving the action has been properly removed. *Hart v. Wendling*, 505 F. Supp. 52, 53 (W.D. Okla. 1980). The removing party therefore "must prove facts in support of the amount in controversy by a preponderance of the evidence." *McPhail*, 529 F.3d at 953 (citing *McNutt v. Gen. Motors*

*Acceptance Corp.*, 298 U.S. 178, 189 (1936)). But, and perhaps confusingly, this "preponderance of the evidence standard applies to jurisdictional facts, not jurisdiction itself[;] . . . what the proponent of jurisdiction must 'prove' is contested factual assertions." *Id.* at 954 (quotations omitted). This is because "jurisdiction itself is a legal conclusion, a consequence of facts rather than a provable 'fact.'" *Id.* (quotations and alterations omitted).

In proving these contested factual assertions, the removing party may rely on, among other things, affidavits, interrogatories or admissions in state court, and calculations from the complaint's allegations. *Id.* Once the party asserting federal jurisdiction has done that, the "*St. Paul Mercury* standard comes to the fore"—that is, "the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum." *Id.* (quotation omitted). In a sense, then, the burden shifts to the party seeking remand, who must prove to a legal certainty the amount in controversy is less than $75,000.

Plaintiffs attack Defendant's assertion that the amount in controversy is greater than $75,000. Because Plaintiffs' action is one for declaratory relief, the amount in controversy "'is measured by the value of the object of the litigation.'" *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). The Tenth Circuit follows the "either viewpoint rule," "which considers either the value to the plaintiff or the cost to defendant of injunctive and declaratory relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum." *Id.* (citation omitted).

To the extent Plaintiffs assert Defendant failed to plausibly allege that the amount in controversy meets the jurisdictional minimum, this Court disagrees. The removal statute

requires only a "short and plain statement of the grounds for removal" in the notice of removal. 28 U.S.C. § 1446(a); *see also Dart*, 574 U.S. at 87. Here, Defendant adequately and plausibly stated that the Petition seeks declaratory and injunctive relief related to the validity, interpretation, and enforceability of certain assignment agreements. As stated by Defendant in the Notice of Removal, those assignment agreements involve various high-dollar assignments, such as the purchase order from Nortek valued at over $2.1 million, commercial equipment valued at over $1 million, and more. In the absence of persuasive argument or authority to the contrary, this allegation is plausible enough to suggest that a declaration from this Court that such agreements are unenforceable would implicate which party has the right to these highly-valued assets. Plaintiffs do not meaningfully dispute this. The Court finds Defendant has met *Dart* and § 1446(a) pleading standards.

However, because Plaintiffs have otherwise contested Defendant's allegations, § 1446(b) and *Dart* requires this Court to determine whether, by a preponderance of the evidence, the amount in controversy meets the jurisdictional minimum. *Auto. Consulting Res., Inc. v. Interstate Nat'l Dealer Servs., Inc.*, No. 17-CV-225-JED-FHM, 2018 WL 3240962, at *5 (N.D. Okla. July 3, 2018) (quoting *Dart*, 574 U.S. at 88-89). The proper procedure is for *both parties* to submit proof to allow the Court to make its determination. *Id.* (quoting *Dart*, 574 U.S. at 88-89).

Plaintiffs argue Cobalt has not established the amount-in-controversy requirement because it merely "lists numbers" from the at-issue agreements. Plaintiffs characterize these amounts as "mere background references." Defendant disagrees, arguing the object of the litigation is the enforceability and economic effect of the agreements. From

Defendant's perspective, Plaintiffs seek relief which would defeat Defendant's ability to enforce assignment and collateral rights to the various assets listed in the at-issue agreements—many of which, individually, are valued at well over $75,000.

To support its assertions, Defendant presents copies of a Factoring Agreement between the parties [Doc. No. 9-1], the Assignment Agreement [Doc. No. 9-2], the Assignment Agreement Amendment [Doc. No. 9-3], a Notice of Assignment of Receivables [Doc. No. 9-4] in which MJ&H indicated it assigned and sold all its rights to the accounts receivable due from Nortek to MJ&H, and a Receivables Deposit Summary [Doc. No. 9-5] showing Nortek has paid Cobalt over $6 million since the date of the Notice of Assignment of Receivables.[2]

The Assignment Agreement states that the Assignor (Mr. Harvey and MJ&H) "desires to assign certain assets and stock to the Assignee" (Cobalt), including those assets previously mentioned in this Order. Doc. No. 9-2. "'The word 'assignment' has a comprehensive meaning and in its most general sense means the transfer or setting over of property, or some right or interest.'" *iFreedom Direct v. First Tenn. Bank. Nat'l*, 540 F. App'x 823, 825 (10th Cir. 2013) (unpublished) (quoting *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 721 (Tex. Ct. App. 2004)).[3] Plaintiffs seek to have such assignments

---

[2] Defendant asserts that, on its own, the state court TRO directing Nortek to pay Plaintiffs rather than Defendant satisfies the amount-in-controversy standard because of the historical high value of those payments.

[3] The Court notes there may be a dispute over whether Texas or Oklahoma law apply to the agreements. It cites to Texas law's definition of "assignment" because the Assignment Agreement indicates it shall be governed by the laws of the State of Texas. In so doing, however, the Court makes no pronouncement on which state's laws govern the contracts at issue. The Court uses Texas's definition of "assignment" here merely to provide a general

declared invalid. Defendant asserts that if the relief sought by Plaintiffs is granted, it will

extinguish its enforceable rights to collect on a receivable stream valued in the millions, to

exercise authority over MJ&H's stock, and more. Accordingly, by virtue of this action,

Defendant seemingly stands to lose its rights, whatever they may be, to property and/or

interests valued at well over $75,000. *See Edison Ranch, Inc. v. Mosaic Potash Carlsbad,*

*Inc.*, No. CIV 17-0790 JB/CG, 2018 WL 582578, at \*19 (D.N.M. Jan. 26, 2018) (finding

amount-in-controversy requirement was established where plaintiff sought a declaration

that defendant's water permit and access to a well were terminated, and defendant asserted

such a declaration would cost it more than $75,000).

Plaintiffs submit minimal evidence in response to Defendant's assertions and assert

Defendant improperly relies on the gross value of every business asset mentioned in the

"parties' background dispute." According to Plaintiffs, who largely frame the amount-in-

controversy inquiry around the cost of the TRO, the object of the litigation is to preserve

the status quo and prevent threatened diversion and interference. But as pointed out by

Defendant, Plaintiffs seemingly conflate the relief sought and granted in the TRO with the

relief sought by the Complaint overall. In focusing on the TRO and their request for a

preliminary injunction in the Complaint, Plaintiffs largely ignore what else they so clearly

request in their Complaint:

> (1) A declaration that any sort of encumbrance, conditional sale, or defeasance-based transfer as to homestead property arising from the agreements is void and unenforceable, and, among other things,

---

idea of the meaning of the word. *See also Assignment*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining assignment generally as "[t]he transfer of rights or property").

(2) "a declaration construing the agreements as invalid and determining the scope and enforceability (if any) of any collateral assignment of corporate stock, receivables, equipment, and real property, including declarations addressing ambiguity and internal inconsistency."

Compl., ¶ IX.D.

In short, Plaintiffs have not established, and neither does this Court find, that it is legally certain that the object of the litigation is worth less than $75,000.[4] *See Interstate Med. Licensure Compact Comm'n v. Bowling*, 113 F.4th 1266, 1275 (10th Cir. 2024) (noting the defendant failed to meet the legal certainty standard where she did not point to a contract or law limiting the recovery amount or an obvious abuse of federal jurisdiction); *Auto. Consulting*, 2018 WL 3240962, at *5 (noting plaintiffs had presented no evidence regarding the amount in controversy).

Plaintiffs offer a plethora of arguments for what Defendant has apparently failed to show with respect to the amount-in-controversy requirement. Yet Plaintiffs do not offer any evidence of their own to meaningfully dispute Defendant's contentions. In the absence of persuasive argument, authority, or evidence to the contrary from Plaintiffs, the Court

---

[4] The Court would note that, with respect to the state court TRO enjoining Defendant from diverting receivables from Nortek, Plaintiffs represent such "receivables are not merely abstract contract rights. They are operating cash flow for MJ&H. If Cobalt is permitted to divert or interfere with Nortek payments . . . Plaintiffs face immediate and irreparable harm, including loss of cash flow, . . . damage to customer relationships, and the real risk that MJ&H will be forced out of business before the merits can be heard." Doc. No. 8 at p. 2. Plaintiffs insist this is not a concession of federal jurisdiction. In any event, Plaintiffs do not offer any meaningful evidence or argument disputing Defendant's contentions that adjudication of the parties' rights under the at-issue contracts implicates lucrative assets, including the survival of Plaintiffs' business.

finds Defendant has established the amount-in-controversy requirement by a preponderance of the evidence.

## II.    The Motion for Order Declaring Expiration of State Court TRO

Just after Plaintiffs filed their Motion to Remand, Defendant moved for this Court to declare that the state court TRO has expired [Doc. No. 3]. Plaintiffs argue the motion should be denied because the Court should resolve the jurisdictional question first. This Court has done so. It now turns to examining the lifespan of the TRO.

Federal Rule of Civil Procedure 65(b)(2) provides:

> The [temporary restraining order issued without notice] expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension.

The Supreme Court has spoken on the application of this rule to TROs issued by state courts prior to removal: "An ex parte temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439-40 (1974). Other courts in the Tenth Circuit have applied this rule. *See U.S. Fleet Tracking LLC v. Brickhouse Elecs., LLC*, No. CIV-12-747-W, 2012 WL 12864989, at *3 (W.D. Okla. Aug. 21, 2012) (finding the lifespan of a state-court TRO, issued ex parte and without notice, was governed by Rule 65(b) upon its removal to federal court, and thus the TRO expired fourteen days after the removal date); *Isler v. N.M.*

*Activities Ass'n*, No. 10-00009 MV/WPL, 2010 WL 11623621, at \*3 (D.N.M. Feb. 2, 2010) ("Even assuming that the State Court did not intend the [TRO] to expire" on the date of a hearing on the issue, the court stated "the maximum period an *ex parte* temporary restraining order may be in place pursuant to Rule 65(b)(2), without consent of the opposing party, is 28 days, and that is assuming a court extends the order for good cause.").

Fourteen days have passed since June 9, 2026, when Defendant removed this case [Doc. No. 1]. Thus, pursuant to Rule 65(b), the TRO issued by the state court expired no later than June 23, 2026 (fourteen days later).

Plaintiffs request that, should this Court declare the TRO expired, it provide them a prompt opportunity to present their request for preliminary injunctive relief under Rule 65(a). They also include a request for a preliminary injunction in the Complaint. But there is not currently a Rule 65(a) motion before this Court. Indeed, the Court is puzzled as to why Plaintiffs have not already brought a Rule 65(a) motion if the situation is as dire as they represent—particularly where the TRO expired, as a matter of law, several weeks ago, and Defendant has indicated it opposes any extension of the TRO.

Other courts in the Tenth Circuit have declined to entertain Rule 65(a) requests when not properly presented in a motion. For example, in *Choctaw Town Square, LLC v. City of Choctaw*, No. CIV-13-118-F, 2013 WL 12347380, at \*4 (W.D. Okla. June 7, 2013), the court stated:

> The court advises plaintiff that the request for preliminary injunction will not be taken up by the court and no preliminary injunction hearing will be set by virtue of the filing of Count I in the First Amended Complaint alone. Rather, if plaintiff intends to press the request for relief, plaintiff must file a separate motion for preliminary injunction and supporting brief. If plaintiff seeks a

10

hearing on the motion for preliminary injunction, that request shall be set out in the motion. Defendants shall be entitled to respond to the motion. The court will then set the matter for hearing, if appropriate.

*See also Tavernier v. Colo. State Bd. of Nursing*, No. 16-cv-02086-STV, 2017 WL 1242995, at *13 (D. Colo. Mar. 17, 2017) (quoting *James Luterbach Constr. Co. v. Adamkus*, 781 F.2d 599, 603 n.1 (7th Cir. 1986)) ("'As a matter of professional practice, counsel who seek temporary relief usually should make a motion for a preliminary injunction separate from the prayer for relief contained in the complaint.'") (also quoting 11A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2949 (3d ed.)) ("'The appropriate procedure for requesting a preliminary injunction is by motion . . . .'"); *Ishoo v. Bd. of Regents Univ. of N.M.*, No. CIV-06-0747 MV/ACT, 2007 WL 9729216, at *13 n.14 (D.N.M. Sep. 29, 2007) ("Regardless of whether the complaint includes a preliminary injunction count, a plaintiff, in order to obtain a preliminary injunction, must file a motion with the Court requesting this relief."). Furthermore, "[a] response to a motion may not also include a motion or a cross-motion made by the responding party." LCvR7.1(c).

If Plaintiffs wish to seek preliminary injunctive relief, they may do so by filing a separate Rule 65(a) motion. If they wish to request expedited briefing at that time, they may do so.

Accordingly, Plaintiffs' Motion to Remand [Doc. No. 2] is DENIED. Plaintiffs' request for attorney fees is also DENIED. Defendant's Motion for Order Declaring Expiration of State Court Temporary Restraining Order [Doc. No. 3] is GRANTED.

11

IT IS SO ORDERED this 17th day of July, 2026.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

12